# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVE ANAYA, | Case No. 1:21-cv-00366-SKO |
| Plaintiff, | **ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |
| v. | |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | (Doc. 1) |
| Defendant. | |

## I.   INTRODUCTION

On March 9, 2021, Plaintiff Steve Anaya ("Plaintiff") filed a complaint under 42 U.S.C. §§ 405(g) and 1383(c) seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act (the "Act"). (Doc. 1.) The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

## II.   BACKGROUND

Plaintiff protectively filed an application for SSI payment on August 25, 2017, alleging that he became disabled on January 20, 2015, due to lack of strength in his right shoulder, nerve problems

---

[1] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (Docs. 7, 9.)

in his right foot and toes, "right knee is bone to bone," medical issues with the right side of his body, and anger issues. (Administrative Record ("AR") 26, 157, 180.) Plaintiff was born on January 10, 1969, and was 48 years old as of application date. (AR 34, 157.) He completed 11th grade and has past work experience as a handyman, line worker, loader, and roofer. (AR 181–82.)

### A. Administrative Proceedings[2]

The Commissioner initially denied Plaintiff's application for SSI benefits on October 27, 2017, and again on reconsideration on April 27, 2018. (AR 99, 107.) Consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 112.) At the hearing on March 25, 2020, Plaintiff appeared without representation. (AR 44–64.)

At the outset of the hearing, the ALJ advised Plaintiff of the disability evaluation process and then noted that he did not have up-to-date records for Plaintiff's case, as the most recent records were from March 2018. (AR 44–45.) The ALJ then went through each of the medical providers from whom he had records, and asked Plaintiff if he had seen those providers since that time; Plaintiff responded that he had not. (AR 45–46.) The ALJ then asked if he had a complete record of Plaintiff's case, and Plaintiff stated that the ALJ had complete records. (AR 46–47.)

Next, the ALJ advised Plaintiff that he was entitled to have an attorney or other qualified individual to assist him with his case. (AR 47.) With regard to attorney's fees, the ALJ and Plaintiff had the following exchange:

> ALJ: [An attorney] also cannot charge you a fee, that I do not approve in advance. Typically, that fee would be limited to 25% or $6,000[,] whichever is less, of past due benefits. You don't pay them in advance and they only get paid if I make a favorable determination that awards benefits in the past. What questions do you have about what I just said?
>
> [Plaintiff]: I – think – I think I – at this point I wouldn't be able to afford one.
>
> ALJ: Well, okay so that's what I'm saying. You don't pay for one in advance. If I make a favorable decision, they get paid out of past due benefits. So, for instance, you're alleging disability back to 2015. If I were to make a determination that you had been disabled since 2015, you would be entitled to benefits back to that point and basically the Agency calculates how many months that is and how much you have gotten for each of those months and they would send you a check for that. If you have a representative, they would be paid out of those past due benefits. So, again, it'd be capped at $6,000 or 25% of the past due benefits, [which]ever is less.

---

[2] Because the parties are familiar with the administrative record, the hearing before the ALJ is summarized here only to the extent relevant to the contested issues.

> So, it's never more than 25% though is capped at $6,000. So, if you were to receive more than say $25,000, they would still only get $6,000 of the past due benefits, but you don't pay for the representative in advance.
>
> [Plaintiff]: Yeah.
>
> ALJ:  Do you have any questions about any of that?
>
> [Plaintiff]:  No, I don't.

(AR 47–48.)  The ALJ subsequently asked Plaintiff if he wanted to postpone the hearing to get a representative, and Plaintiff responded he did not.  The ALJ advised Plaintiff that he would be sent via mail a CD with all of the records in his case, and that he had 15 days from the date of receipt of the CD to object or comment on anything contained in the record.  (AR 49.)

Plaintiff then testified about his alleged past jobs and disabling conditions.  (AR 52–64.)  He had injured his knee and had surgery to "clean out all the . . . mess in there.  The meniscus and everything was all just shredded, so there was nothing left."  (AR 58.)  His doctors advised him to wait until he was 60 years old to get a knee replacement.  (*Id.*)  Plaintiff uses a cane to walk.  (AR 59.)  He estimates he can walk one block without the cane, but would have trouble walking back due to pain.  (AR 60.)  He avoids going on long shopping trips and family functions.  (AR 61.)

When asked about his level of schooling, Plaintiff stated that 11th grade was the last grade he attended, "[b]ut they were just going to give [him] a diploma just to get [him] through the system . . . . [A]ll [he] had to do was attend . . . . [H]e – wasn't able to do the work."  (AR 57.)  He further testified that he "was always in special ed[ucation]," and "the last time they did like a test on [him]," he "only had like a 3rd [or] 2nd grade level or something like that."  (AR 57.)

Following Plaintiff's testimony, the ALJ examined the Vocational Expert ("VE").  (AR 64.) The VE testified that Plaintiff had past work experience as a roofer helper, Dictionary of Occupational Titles ("DOT") code 869.687-026, which was very heavy work with a specific vocational preparation[3] of 2.  (AR 64–65.)  The ALJ asked the VE to consider a person of Plaintiff's

---

[3] Specific vocational preparation, as defined in DOT, App. C, is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation. DOT, Appendix C – Components of the Definition Trailer, 1991 WL 688702 (1991). Jobs in the DOT are assigned SVP levels ranging from 1 (the lowest level – "short demonstration only") to 9 (the highest level – over ten years of preparation). *Id*.

age, experience, and education. (AR 65.) The VE was also to assume this person could: lift or carry 20 pounds occasionally and 10 pounds frequently; stand or walk about six hours in an eight-hour workday; sit for about six hours; and occasionally climb ramps, stairs, ladders, or scaffolds, kneel, crouch, crawl, and reach overhead with the dominant upper extremity. (AR 65.) The VE testified that such a person could not perform Plaintiff's past work but could perform other jobs in the national economy, such as cashier, DOT code 211.462-010, sales attendant, DOT code 299.677-010, and cleaner, DOT code 323.687-014, all light jobs with an SVP of 2. (AR 65.)

In a second hypothetical, the ALJ asked the VE to consider an individual with the same limitations as set forth in the first hypothetical, except that the person would need to use a cane to stand or walk for more than 30 minutes. (AR 65.) The VE testified that such a person would be able to perform only sedentary jobs, such as document preparer, DOT code 249.587-018, cutter and paster, DOT code 249.587-014, and surveillance system monitor, DOT code 379.367-010, all with an SVP of 2. (AR 66.)

The ALJ asked the VE, in a third hypothetical, to consider the person in the second hypothetical, with the additional limitation that the person would need two extra 15-minute breaks per day. (AR 66.) The VE testified there would be no work such a person could perform. (AR 66.)

After the ALJ finished his questioning, the ALJ asked Plaintiff if he had any questions for the VE. (AR 66.) Plaintiff responded that he did, and the following colloquy ensued:

> [Plaintiff]: [T]here's one where [the VE] said he said cashier and me, with math, I don't think I could get past – a big plus, what do you call it math – math –I mean, with my – I mean, I can do the simple plusses, but as soon as you get up high in the – I probably couldn't do it.
>
> ALJ: Okay.
>
> [Plaintiff]: So, I mean, anything to do with money involved, I probably – I probably would have problems, you know.
>
> ALJ: All right. So, do you have a question for [the VE] or are you just commenting on the testimony?
>
> [Plaintiff]: No, just commenting. Okay, no questions.

(AR 66–67.)

**B.     The ALJ's Decision**

In a decision dated April 8, 2020, the ALJ found that Plaintiff was not disabled, as defined by the Act. (AR 26–36.) The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 416.920. (AR 28–36.) The ALJ determined that Plaintiff had not engaged in substantial gainful activity since August 25, 2017, the application date (step one). (AR 28.) At step two, the ALJ found Plaintiff's following impairments to be severe: degenerative joint disease, right shoulder disorder, and obesity. (*Id.*) Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three). (AR 29.)

The ALJ then assessed Plaintiff's RFC and applied the RFC assessment at steps four and five. *See* 20 C.F.R. § 416.920(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity . . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."). The ALJ determined that Plaintiff had the RFC:

> to perform light work as defined in 20 CFR [§] 416.967(b) except: [Plaintiff] can occasionally lift or carry twenty pounds and frequently lift or carry ten pounds. He can stand and walk for six hours of an eight-hour workday and sit for six hours of an eight-hour workday. [Plaintiff] can occasionally kneel, crouch, crawl; climb ladders, ropes, or scaffolds; and, reach overhead with his dominant upper extremity

(AR 30.) Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause some of the alleged symptoms[,]" he rejected Plaintiff's subjective testimony as "not entirely consistent with the medical evidence and other evidence in the record." (AR 31.)

The ALJ determined that, given his RFC, Plaintiff was not able to perform his past relevant work as a roofer helper (step four). (AR 33–34.) The ALJ ultimately concluded that Plaintiff was not disabled because Plaintiff could perform a significant number of other jobs in the national economy, specifically cashier, sales attendant, and cleaner (step five). (AR 35.)

On June 9, 2020, Plaintiff sought review of the ALJ's decision before the Appeals Council, which denied review on September 1, 2020. (AR 4, 9.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 416.1481.

### III.   LEGAL STANDARDS

**A.   Applicable Law**

An individual is considered "disabled" for purposes of disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). However, "[a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* at § 1382c(a)(3)(B).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520); *see also* 20 C.F.R. § 416.920. The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing [his] past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *see also* 20 C.F.R. § 416.920(a)(4) (providing the "five-step sequential evaluation process" for SSI claimants). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520); 20 C.F.R. § 416.920.

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue [his] past work, the burden

6

shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

### B.     Scope of Review

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).

"This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." (citations omitted)).

In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless."

*Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Circ. 2008) (quoting *Robbins v. Social Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

## IV.    DISCUSSION

Plaintiff contends that he "was prejudiced by his lack of representation at the ALJ hearing, as the ALJ harmfully erred by breaching the 'heightened duty' to ensure that the record was fully and fairly developed and that [Plaintiff's] interests were protected." (Doc. 17 at 2.)  For the reasons explained below, the Court finds that the ALJ failed to develop the record as to Plaintiff's mental impairments and will order remand on that basis.

### A.    Legal Standard

"Lack of counsel does not affect the validity of the hearing and hence warrant remand, unless the claimant can demonstrate prejudice or unfairness in the administrative proceedings." *Vidal v. Harris*, 637 F.2d 710, 714 (9th Cir. 1981).  In *Cox v. Califano*, 587 F.2d 988 (9th Cir. 1978), the Ninth Circuit held that where a claimant is not represented by counsel, "it is incumbent upon the ALJ to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." *Id.* at 991 (internal quotation marks and citation omitted).  In such a situation, the ALJ "must be especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Id.* (internal quotation marks and citation omitted).  "[T]he issue is not whether the right to representation was knowingly waived, rather, it is whether, in the absence of representation, the administrative law judge met the heavy burden imposed by *Cox*." *Vidal*, 637 F.2d at 714.

Here, Plaintiff contends his waiver of right to counsel was not knowing and intelligent, and he was prejudiced by his lack of representation as he lacked the intellectual capacity to adequately question the VE or advocate for himself. (Doc. 17 at 8–16.)  The Commissioner responds that the ALJ informed Plaintiff of his right to representation, and Plaintiff made an informed decision to

proceed with the hearing. (Doc 18 at 3–5.) The Commissioner also asserts the ALJ satisfied his duty to fully investigate Plaintiff's case, confirming that he was in possession of all of the relevant medical records that existed and giving Plaintiff an opportunity to question the VE. (*Id.* at 5–7.)

As noted above, the primary question before the Court in this case is whether the ALJ met his heightened duty to develop the record given Plaintiff's lack of representation at the hearing. *See Vidal*, 637 F.2d at 714. Therefore, even assuming that Plaintiff's waiver of representation was knowing and intelligent as claimed by the Commissioner, remand may be warranted if the ALJ failed to fully develop the record and Plaintiff was prejudiced. Here, the Court finds that Plaintiff's lack of representation at the hearing was prejudicial because the ALJ failed to meet his duty to fully develop the record as to Plaintiff's mental impairments.

In his opinion, the ALJ stated the following regarding Plaintiff's mental impairments:

> The record contains allegations or diagnoses related to mental impairment, involving limited mental capacity and anger issues; however, I find the record does not contain the necessary laboratory and diagnostic test results to support any such diagnosis. A finding of a medically determinable impairment may not be based solely on [Plaintiff]'s allegations regarding symptomatology, or a physician's diagnosis alone (20 CFR [§] 416.921). Therefore, I find [Plaintiff] does not have any medically determinable mental impairment.

(AR 29 (internal citations omitted).)

As the ALJ expressly acknowledged, "the record contains allegations or diagnoses related to mental impairment, involving limited mental capacity and anger issues." (AR 29.) At the hearing, Plaintiff also testified he had been in special education in school and had difficulty doing math. (AR 57, 66.) Despite this testimony, the ALJ did not ask Plaintiff any questions about possible mental limitations. (*See* AR 57.) Under these circumstances, the record was ambiguous as to whether Plaintiff has a medically determinable mental impairment, triggering the need for further development of an adequate record. *See Hilliard v. Barnhart,* 442 F. Supp. 2d 813, 817 (N.D. Cal. 2006) (finding independent duty to develop record when the plaintiff "raised a suspicion" concerning an alleged mental impairment). Accordingly, it was error for the ALJ to point to the absence of objective medical findings and opinions, despite the presence of other evidence such as Plaintiff's own testimony, to conclude that Plaintiff had no medically determinable mental impairments, instead of developing the record—especially given that Plaintiff may not have known

how to do so himself. *See Potts v. Astrue*, No. CV 10–2781–JEM, 2011 WL 995856, at *5 (C.D. Cal. Mar. 17, 2011) (finding that the ALJ failed to develop the record fully where the ALJ "had before him the substantial unrebutted evidence of [the unrepresented plaintiff's] mental limitations from [the plaintiff], his niece and the Social Security interviewer" and also finding that "[t]he ALJ's determination of no mental impairment must be set aside as it is the product of the ALJ's failure to develop the record properly"); *see also Tonapetyan v. Halter*, 242 F.3d 1144, 1151 (9th Cir. 1996) ("The ALJ's duty to develop the record fully is also heightened where the claimant may be mentally ill and thus unable to protect [his] own interests.").

One of the tools the ALJ has to develop the record is the ability to order a consultative examination, *i.e.*, "a physical or mental examination or test purchased for [a claimant] at [the Commissioner's] request and expense." 20 C.F.R. §§ 404.1519, 416.919. In this case, given that there was evidence of mental impairments, as acknowledged by the ALJ, the Court finds that the ALJ was obliged to obtain a consultative examination to supplement the record as to Plaintiff's mental impairments. The ALJ's failure to do so was prejudicial because, had Plaintiff been found to have mental impairments, that may have affected the RFC determination and the ultimate nondisability determination. *See Potts*, 2011 WL 995856, at *6 ("Had the ALJ developed the record further and obtained a mental assessment, the ALJ may have had to recognize additional limitations in his RFC."). Therefore, remand is required.

To the extent that the Commissioner asserts that there was no duty to develop the record because Plaintiff failed to satisfy his burden of proving disability and furnishing supporting evidence (*see* Doc. 18 at 7), this "confuses the burden of *proof*, which is clearly on the claimant at step two, with the ALJ's independent duty to develop the record, which is triggered by ambiguous evidence." *Hilliard*, 442 F. Supp. 2d at 817 (citing *Tonapetyan*, 242 F.3d at 1151) (emphasis in original).

## V.   CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is therefore VACATED, and the case is REMANDED to the ALJ for further proceedings consistent with this Order. The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Steve Anaya and against Defendant Kilolo Kijakazi, Acting

10

Commissioner of Social Security.

IT IS SO ORDERED.

| Dated: **September 6, 2022** | /s/ *Sheila K. Oberto* |
|---|---|
| | UNITED STATES MAGISTRATE JUDGE |